ANDRUS vs. CHRETIEN.

APPEAL FROM THE COURT OF THE FIFTH JUDICIAL DISTRICT, THE JUDGE OF THE SEVENTH PRESIDING.

The obligation of a surety is an accessory to the principal obligation, and must follow it; so that the former cannot be sold without the latter.

The sale of a surety debt alone is null and void, even if the principal debtor is insolvent. For insolvency does not destroy the principal obligation; if it did, it would follow that the surety was discharged.

This action is brought by the purchaser of a certain security debt, sold at sheriff's sale, to enforce payment of the defendant, the sole surety of one Stephen Brown. On the 27th day of January, 1820, Stephen Brown became the purchaser of four slaves, at the sale of the community between John Andrus and his late wife for three thousand four hundred and sixty-five dollars, and signed the *proces verbal* of sale with Hypolite Chretien as his surety, the slaves remaining mortgaged until payment.

Shortly after the sale some objection arising that some of the negroes were afflicted with hereditary diseases, a verbal agreement was entered into between John Andrus, to whom the obligation was payable, and Brown, that the former should take the negroes back. They were accordingly returned. Brown soon after died insolvent, in the parish of St. Martin. The heirs renounced his succession, and a curator was appointed to the vacant estate. In May, 1825, Brown and Chretien's obligation having never been cancelled or given up, although the negroes had been at the price they were sold; John Andrus assigned the obligation to Luke Lesassier, empowering him to collect and receive the same by all legal means in his power; and after retaining one thousand two hundred and fifty dollars, a sum that Andrus owed him, he was to return the balance to Andrus.

In July, 1825, Lesassier commenced a suit against the curators of Brown's estate, and had the negroes seized and sold, and thereby obtained a legal title to them. By a written agreement between Lesassier and the curator, judgment

was given by consent, and the sale of the negroes was to be in complete satisfaction of it. All these proceedings were had between the assignee of Andrus and the curator without the surety ever being notified. On the 18th of October, 1827, Lesassier, as assignee, and being subrogated to all the rights of John Andrus in the obligation aforesaid of Brown and Chretien, executed a written release in favor of Chretien, discharging him from all further liability under the obligation. But the obligation still remained uncancelled; and on the fourth day of October, 1830, this same debt was advertised and sold at sheriff's sale by virtue of two executions, one against John Andrus and the other against Luke Lesassier, and the plaintiff became the purchaser.

Suit was instituted alone against Chretien at the May term, 1831. He pleaded a complete acquittance and discharge from all liability on account of the debt; and had judgment. The plaintiff appealed.

*Garland* and *Bowen*, for plaintiff.

1. The instrument between Lesassier and Andrus is not a transfer, but a procuration. If it be a transfer it is only for the portion coming to Lesassier from Andrus, which was one thousand two hundred and fifty dollars and interest; and being but an attorney in fact he could not release a debt or make a donation without consideration. *Pothier Contrat du Mandat, volume* 6, *page* 81. 2 *do.* 102, *chapter* 2, *no.* 57.

2. If this instrument be a transfer, it is only made in trust for the portion over Lesassier's debt; and the trustee cannot release the debtor without consideration.

*Simon*, for defendant, pleaded:

1. The release and discharge given in writing by Lesassier, the assignee of the debt sued for. The same release was given to the principal debtor.

*Porter, J.* delivered the opinion of the court.

The defendant in the year 1820, became surety for one Brown, who purchased four slaves at a judicial sale of the property in community between a certain John Andrus and the heirs of his deceased wife. The last instalment of the

debt became due in April, 1823. In 1825, Andrus assigned the debt to Luke Lesassier. Previous to his doing so, however, Lesassier was informed that the sale was not binding on Brown; and that the latter intended to bring an action of rescission. He communicated this information to Andrus, and the slaves on examination being found subject to the objections which the vendee made against them, it was agreed between the parties that they should be returned, and the sale cancelled. The property according to the agreement was delivered back to the vendor, but before the act of rescission could be passed, or at least before it was passed, Brown the vendee died. Lesassier in the meantime had obtained an assignment of the debt due by Brown to Andrus, and by agreement, between him and the curator of Brown's estate, suit was permitted to be commenced, to be carried on to final judgment; and execution issue on it, in order to secure Lesassier's debt, and enable the parties legally to divest Brown's estate of its title to the slaves. The execution was accordingly levied on these slaves, then in the hands of Andrus the vendor, and they were sold at public auction, for a price hardly amounting to one-third of the original purchase. The defendant hearing of these transactions applied to Andrus the vendor for a discharge; he answered that he had no claim on the defendant, but that Lesassier the assignee had the business in hand and was authorised to settle it. Application was accordingly made to Lesassier, who gave to the defendant a full discharge of all claims which he, Lesassier, had in consequence of the assignment already mentioned. This was in the year 1827. In the year 1830, the creditors of John Andrus the vendor, having obtained judgment against him, levied their execution on the debt due by the defendant as surety to Brown. The defendant gave public notice that he had a discharge for it; and the notice was made known to the bidders on the day of sale. It was, however, purchased by the plaintiff for one hundred and fifteen dollars. The sum now claimed from the defendant amounts, with interest, to nearly four thousand dollars.

A part of these facts are proved by parole evidence and a variety of objections to the legality of its introduction and its

effect have been offered to this court. We have considered them and were prepared to express an opinion on them. But on examining the record an objection has presented itself which cannot be got over.

The debt advertised to be sold, is described in these words : "A certain supposed debt due by Hypolite Chretien to Andrus and Lesassier, as security for a certain Stephen Brown, at the sale of the estate of John Andrus and his wife Charlotte Hanchette, deceased, made on the 27th January, 1820, at which sale the said Brown became the purchaser," &c. &c.

In the sheriff's deed under which the plaintiffs claim, the following description is given of it : "All that certain supposed debt due at the sale of the estate of the said John Andrus and his wife Charlotte Hanchette, by Hypolite Chretien as security for a certain Stephen Brown."

It is thus seen that a debt due by a surety was alone sold, and this could not be legally done. The obligation of a surety in the reason of the thing, and by the express definition given in our code, is accessory to the principal obligation, and must follow it. Hence, whoever has the right to the principal, has the right to that which flows from it. They cannot be divided. The obligee in this instance could not have retained the principal debt, and assigned over his claim on the surety, no one claiming under, or through him can have greater rights. Were we to hold this sale to be valid we would present a case never before seen, or thought of ; one where the surety could owe one man and the principal another. The circumstance of the estate of the principal being insolvent makes no difference. Insolvency does not destroy the obligation. If it did, it would follow the surety was discharged.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.

*The obligation of a surety is an accessory to the principal obligation, and must follow it; so that the former cannot be sold without the latter. The sale of a surety debt alone is null and void, even if the principal debtor is insolvent. For insolvency does not destroy the principal obligation ; if it did, it would follow that the surety was discharged.*

☞ MARTIN, J. was prevented by indisposition, from attending at this term.